IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS C. MAFFEI,                         3:12-CV-01394-BR

        Plaintiff,                        OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,[1]

        Defendant.


LISA R. J. PORTER
KP Law LLC
16200 S.W. Pacific Highway
Suite H-280
Portland, OR 97224
(503) 245-6309

        Attorneys for Plaintiff

---

        [1] Carolyn W. Colvin became the Acting Commissioner of Social
Security on February 14, 2013.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Carolyn W. Colvin should be
substituted for Michael J. Astrue as Defendant in this case.  No
further action need be taken to continue this case by reason of
the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405.

1  -  OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**DAPHNE BANAY**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104
(206) 615-2113

      Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Thomas C. Maffei seeks judicial review of a final decision of the Commissioner of the Social Security Admini-stration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and found Plaintiff ineligible for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.[2]  This Court has jurisdiction to review the Commissioner's

---

    [2]  On February 3, 2009, the SSA "disapproved" Plaintiff's SSI application on the grounds that Plaintiff wasn't eligible to receive SSI because of his living arrangements and his monthly income based on his spouse's Social Security benefits.  Tr. 61. The SSA noted:  "Because you are not eligible for these reasons, we have not determined whether or not you are disabled." Tr. 62. Although Plaintiff referenced Plaintiff's application for SSI benefits in his Complaint, neither he nor the ALJ specifically address the ineligibility question nor SSI benefits.  Thus, the Court need not address that issue.

2  -  OPINION AND ORDER

final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

## ADMINISTRATIVE HISTORY

Plaintiff protectively filed an application for a period of disability and DIB on January 16, 2009, alleging a disability onset date of August 8, 2008, and an application for SSI on January 27, 2009.  Tr. 59, 61, 135.[3]  Plaintiff's last date insured was September 30, 2012.  Tr. 136, 212.  The application for DIB was denied initially and on reconsideration.[4]  Tr. 69, 77.  An Administrative Law Judge (ALJ) held a hearing on March 18, 2011.  Tr. 29-58.  Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on March 31, 2011, in which he found Plaintiff was not disabled from August 8, 2008, through the March 31, 2011, hearing date and, therefore, is not entitled to benefits.  Tr. 16-31.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on June 8,

_____

[3] Citations to the official transcript of record filed by the Commissioner on January 2, 2013, are referred to as "Tr."

[4] As noted, the SSA found Plaintiff was ineligible for SSI benefits.

3  -  OPINION AND ORDER

2012, when the Appeals Council denied Plaintiff's request for
review.


## BACKGROUND

Plaintiff was born June 20, 1957, and was 53 years old at
the time of the hearing.  Tr. 32.  Plaintiff completed a General
Educational Development (GED) degree and two years of college
courses.  Tr. 32.  Plaintiff has past relevant work experience as
a gas-station cashier, machine operator, project manager, and
security guard.  Tr. 51-52, 141.

Plaintiff alleges disability since August 8, 2008, primarily
due to chronic pain in his neck, shoulders, back, hips, and legs.
Tr. 33.  Plaintiff also testified he has vascular disease;
headaches; blurred vision; high cholesterol; anger issues;
depression; ischemia in his lower back and groin area; arthritis,
bursitis, tendon calcification, and a torn labrum in his right
shoulder; sleeping problems; and carpal tunnel in both hands.  He
also had an aortic bypass in March 2010.  Tr. 33-44.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence.  *See* Tr. 21-22.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).  It is more than a mere scintilla [of evidence] but less than a preponderance.  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation.

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). *See also Keyser v.*

*Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen*, 885

F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also
Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform.  *Lockwood v.
Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2.  If the Commissioner meets this burden, the claimant
is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since August 8, 2008, the alleged
disability onset date.  Tr. 19.

At Step Two the ALJ found Plaintiff has the severe
impairments of degenerative disk disease, peripheral vascular

8  -  OPINION AND ORDER

disease, post-aortofemoral bypass graft, and right-shoulder
tendon calcification.  Tr. 19.  The ALJ found there was
insufficient evidence to support a finding of mental limitations.
Tr. 22.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1.  Tr. 19.  The ALJ found Plaintiff has the RFC to
perform light work.  Tr. 19.  The ALJ found Plaintiff is limited
to occasionally climbing ramps and stairs and cannot climb
ladders, ropes, or scaffolds.  Tr. 19-20.  The ALJ also found
Plaintiff can frequently balance; can occasionally stoop, kneel,
crouch, and crawl; is limited to occasional overhead reaching;
and should avoid concentrated exposure to vibration.  Tr. 20.

At Step Four the ALJ concluded Plaintiff is able to perform
his past relevant work as a gas-station cashier, project manager,
and security guard.  Tr. 22.  The ALJ noted, however, that it was
not clear if Plaintiff's past relevant work was performed at the
"substantial gainful activity level."  Tr. 23.

At Step Five the ALJ found "[t]ransferability of job skills
is not material to the determination of disability because using
the Medical-Vocational Rules as a framework supports a finding
that Plaintiff is 'not disabled' whether or not [Plaintiff] has
transferable job skills."  Tr. 23.  In the alternative, the ALJ

found Plaintiff could perform other jobs that exist in
significant numbers in the national economy.  Tr. 23.
Accordingly, the ALJ found Plaintiff was not disabled from
August 8, 2008, through March 31, 2011.  Tr. 24.


## DISCUSSION

Plaintiff contends the ALJ erred (1) at Step Two when he
failed to find that Plaintiff suffers from complex chronic pain
syndrome, major depression, and possible somatoform disorder;
(2) at Step Three when he improperly found Plaintiff's
impairments do not equal any Listing; (4) at Step Five when he
posed an incomplete hypothetical to the VE that did not include
all of Plaintiff's limitations; (3) by improperly discrediting
Plaintiff's testimony; and (4) by improperly discrediting lay-
witness statements of Plaintiff's wife and not allowing her to
testify at the hearing.

**I.   The ALJ erred at Step Two.**

As noted, at Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout*, 454 F.3d
at 1052.  *See also* 20 C.F.R. § 404.920(a)(4)(ii).  A severe
impairment "significantly limits" a claimant's "physical or
mental ability to do basic work activities."  20 C.F.R.
§ 404.921(a).  *See also Ukolov*, 420 F.3d at 1003.  The ability to

10 - OPINION AND ORDER

do basic work activities is defined as "the abilities and
aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.921(a),
(b).  Such abilities and aptitudes include walking, standing,
sitting, lifting, pushing, pulling, reaching, carrying, handling,
seeing, hearing, speaking; understanding, carrying out, and
remembering simple instructions; using judgment; responding
appropriately to supervision, co-workers, and usual work
situations; and dealing with changes in a routine work setting.
*Id*.

The Step Two threshold is low:

> [A]n impairment can be considered as not severe
> only if it is a slight abnormality which has such
> a minimal effect on the individual that it would
> not be expected to interfere with the individual's
> ability to work . . . .  [T]he severity regulation
> is to do no more than allow the Secretary to deny
> benefits summarily to those applicants with
> impairments of a minimal nature which could never
> prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).

As noted, the ALJ found Plaintiff has the severe impairments
of degenerative disk disease, peripheral vascular disease, post-
aortofemoral bypass graft, and right-shoulder tendon
calcification.  Plaintiff, however, asserts the ALJ erred at Step
Two when he did not find Plaintiff's alleged impairment of
complex chronic pain syndrome and major depression were severe.
Although Plaintiff asserts the ALJ erred when he did not find
Plaintiff potentially has somatoform disorder, Plaintiff concedes

11 -  OPINION AND ORDER

he has not been diagnosed with this disorder.

The ALJ noted Plaintiff's testimony regarding anger and depression, but he concluded the evidence did not establish Plaintiff had mental limitations.  Tr. 22.  The ALJ pointed out that even though testing suggested Plaintiff had depressive symptoms, Plaintiff did not seek "treatment for depression other than medication and he testified the medication helped with his anger."  Tr. 22.

Although the ALJ noted some evidence of Plaintiff's alleged mental symptoms, the Court finds on this record that the ALJ failed to consider substantial evidence that supports Plaintiff's allegations of depression and anger issues.  For example, the record reflects in October 2009 Plaintiff received mental-health counseling.  The physicians who counseled Plaintiff noted he reported feeling homicidal, was "visibly shaking," was a "moderate risk for harm to others," and "would benefit from seeing a psychiatrist."  Tr. 560-61.  During a behavioral-health lab call in November 2009, Psychologist Sharlene Green noted Plaintiff "stated he would not harm himself today but he wouldn't make any promises about the future" and that Plaintiff "seems unable to control angry responses enough to problem solve.  He becomes emotionally flooded with pain + despair and is then unable to engage in more positive ways to deal with the pain."  Tr. 530.  The record also reflects John Reilley, P.T., concluded

as part of a comprehensive pain-management evaluation on June 1, 2010, that "test results suggest [Plaintiff] is experiencing symptoms consistent with clinically-significant depression." Tr. 464, 477.  On June 2, 2010, Plaintiff also scored positive for depression based on a PHQ-2 screening.  Tr. 460.  The record also reflects Plaintiff attended an eight-week group pain-management class in May and June 2010.  Tr. 44, 456, 479, 481-82, 484.

Although the ALJ noted Plaintiff reported chronic back pain from a 1996 work injury, the ALJ did not consider chronic pain syndrome as an impairment in and of itself.  The record indicates, however, a number of Plaintiff's physicians diagnosed Plaintiff with chronic pain syndrome.  *See* Tr. 233 (chronic back pain); 585 (chronic pain syndrome); Tr. 452 (complex chronic pain syndrome).  In addition, DDS[5] physician Martin Kehrli, M.D., noted Plaintiff was diagnosed with chronic pain syndrome. Tr. 272.

The Court concludes on this record that the ALJ erred when he found Plaintiff's depression and chronic pain to be nonsevere because he did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

---

[5]  Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

13 -  OPINION AND ORDER

II.  **The ALJ erred at Step Three when he found Plaintiff's impairments do not equal any Listing.**

At Step Three the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  SSR 96-6P provides in pertinent part:

> [L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.
>
> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.  Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review.
>
> When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.

Plaintiff contends the ALJ erred at Step Three when he found Plaintiff's impairment of preipherial arterial disease does not

14 -  OPINION AND ORDER

meet the criteria of Listing 4.12.  Listing 4.12 provides in
relevant part:

> Peripheral arterial disease, as determined by
> appropriate medically acceptable imaging (see
> 4.00A3d, 4.00G2, 4.00G5, and 4.00G6), causing
> intermittent claudication (see 4.00G1) and
> one of the following: A. Resting
> ankle/brachial systolic blood pressure ratio
> of less than 0.50.

As noted, the ALJ found at Step Three that Plaintiff's
impairments do not medically equal one of the listed impairments
in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ
specifically found:  "[Plaintiff's] peripheral vascular disease
and post aortofemoral bypass graft do not meet the criteria of
section 4.04 or 4.12 or any other listed impairments.  No
physician has opined his impairments are equal to a listed
impairment."  Tr. 19.

The record indicates in November 2009 Plaintiff was tested
as to peripheral arterial disease and found to have a right-ankle
brachial pressure index score of 0.51 and a left-ankle brachial
index of 0.38.  Tr. 433.  The record includes a physical RFC
assessment from DDS and a physical summary from DDS that were
completed in March 2009 and August 2009 respectively.  Tr. 272-
79, 303-04.  Both DDS reports predated Plaintiff's ankle-brachial
pressure index test, and neither took into account or addressed
Plaintiff's diagnoses of peripheral arterial disease.
Plaintiff's ankle brachial pressure index test was performed

prior to Plaintiff's aortobifemoral bypass surgery in March 2010, but there is nothing in the record to indicate that Plaintiff was retested after the surgery.

The ALJ has an independent duty to fully and fairly develop the record and to ensure that the Plaintiff's interests are considered. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation. *McLeod v. Astrue,* 640 F.3d 881, 885 (9th Cir. 2011).

SSR 96-6P makes clear that the ALJ may not make an equivalency finding without obtaining the opinion of a "[s]tate agency medical or psychological consultant" or an updated medical opinion from a medical expert. Here the ALJ did not obtain either the opinion of a state agency medical or psychological consultant or an updated opinion from a medical expert with respect to Plaintiff's peripheral arterial disease following Plaintiff's surgery.

Plaintiff also contends the ALJ erred at Step Three when he failed to consider Plaintiff's chronic pain syndrome and depression as listed impairments. As noted, the Court already has found the ALJ erred when he determined Plaintiff's depression and chronic pain are nonsevere because the ALJ did not provide legally sufficient reasons supported by substantial evidence in

the record for doing so.

Thus, the Court concludes on this record that the ALJ erred at Step Three when he made a finding that Plaintiff's peripheral arterial disease did not meet a Listing without identifying the medical evidence necessary to support such a finding.  In addition, the Court finds the ALJ's errors at Step Two could affect the ALJ's assessment of Plaintiff's impairments and also could alter the ALJ's findings at Step Three.

**III. The ALJ's hypothetical to the VE.**

Plaintiff contends the ALJ's hypothetical to the VE was inadequate because it did not contain all of Plaintiff's limitations.  The Court already has concluded the ALJ erred at Step Two (which also may affect the ALJ's findings at Step Three); the ALJ's assessment of Plaintiff's RFC; and, in turn, the adequacy of the limitations included in the ALJ's hypothetical posed to the VE.

**IV.  Plaintiff's testimony.**

Plaintiff alleges the ALJ erred by failing to give clear and convincing reasons for rejecting Plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment

17 -  OPINION AND ORDER

or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The record reflects Plaintiff sustained a back injury in 1996 when a wooden pallet fell on him at work. Tr. 33. Plaintiff alleges he suffers chronic pain resulting mostly from this injury. Tr. 33, 36. Plaintiff testified he is unable to work due to pain in the neck, shoulders, back, hips, and legs. Tr. 33. Plaintiff testified he last worked in August 2008 as a gas-station cashier. Tr. 33. He also testified he lays down with his legs up and a heating pad on his back most of the day because sitting, standing, and walking cause swelling and pain.

18 - OPINION AND ORDER

Tr. 35.  Plaintiff stated he has anger issues, depression, and anxiety related to chronic pain, for which he takes antidepressants.  Tr. 40-44, 49.  Plaintiff also testified he has problems sleeping and has carpal-tunnel syndrome in both hands. Tr. 42-43, 47-48.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment."  Tr. 20.

Although the ALJ provided reasons for discrediting Plaintiff's subjective symptom testimony, those reasons would be undermined if the ALJ had reached a different conclusion at Steps Two and Three regarding Plaintiff's alleged impairments.

**V.   Lay-witness testimony.**

Plaintiff contends the ALJ erred when he discredited the written statements of Plaintiff's wife, Cathy Jean Rogers, and did not permit her to testify at the hearing.

When determining whether a claimant is disabled, the ALJ must consider lay-witness testimony concerning a claimant's limitations and ability to work.  *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).  If the ALJ wishes to discount the testimony of lay witnesses, he "must give reasons that are

19 -  OPINION AND ORDER

germane to each witness." *Id.* (quoting *Nguyen v. Chater*, 100
F.3d 1462, 1467 (9th Cir. 1996)).  *See also Lester v. Chater,* 81
F.3d 821, 834 (9th Cir. 1995)(improperly rejected lay-witness
testimony is credited as a matter of law).

Germane reasons for discrediting a witness's testimony
include inconsistency with the medical evidence and the fact that
the testimony "generally repeat[s]" the properly discredited
testimony of a claimant.  *Bayliss v. Barnhart*, 427 F.3d 1211,
1218 (9th Cir. 2005).  *See also Williams v. Astrue*, 493 Fed.
App'x 866 (9th Cir. 2012).

The ALJ did not allow Rogers to testify at the hearing on
the ground that:  "I'm not going to take corroborating evidence,
if she has anything new to add we'll listen to it, otherwise we
don't need her testimony."  Tr. 51.  The ALJ, however, gave
Plaintiff permission to submit another written statement from
Rogers after the hearing.  Tr. 51.  Plaintiff's counsel did not
indicate Rogers's testimony was going to add anything new to the
record, and the record does not reflect that Plaintiff submitted
another written statement from Rogers.

Nevertheless, Plaintiff contends the ALJ was required to
allow Rogers to testify pursuant to SSR 13-1p, which was
effective February 28, 2013.  SSR 13-1p, however, addresses the
right of a claimant to *cross-examine* witnesses as opposed to
calling witnesses and, in any event, was not in effect at the

20 -  OPINION AND ORDER

time of Plaintiff's hearing.  Accordingly, the Court finds SSR
13-1p does not apply.  Plaintiff has not cited to any other
authority to support its position that an ALJ is required to
accept the in-person testimony of lay witnesses at the hearing.
Nevertheless, because the ALJ considered the two written
statements of Rogers and invited an additional written statement,
the Court concludes to the extent that the ALJ may have erred by
refusing to hear Rogers's live testimony, such error is harmless.

      In her February 2009 statement Rogers reported Plaintiff's
daily activities consisted of taking medicine, showering, eating
meals, sitting, and laying down.  Tr. 150.  Rogers reported she
personally took care of the household duties, yard, and animals.
Tr. 151.  She stated Plaintiff could lift, squat, bend, stand,
reach, walk, kneel, climb stairs, complete tasks, and use his
hands, but all of these actions caused him pain and he "requires
a resting period before he can continue the task at hand."
Tr. 155.  In her February 2011 statement, Rogers reported similar
limitations and stated it causes Plaintiff's back to spasm and
his legs and feet to swell when he stands.  Tr. 216.  She noted
Plaintiff had to lay down, elevate his legs, and use a heating
pad to relieve the pain.  Tr. 216.  Rogers also reported
Plaintiff was short and curt with others, and he got angry "in a
heart beat" even though he was taking antidepressants.  Tr. 221.

The ALJ found the allegations of Rogers were "not entirely credible." Tr. 22. The ALJ noted even though Plaintiff might lie down much of the day, there was not any evidence that it was a medical necessity. The ALJ pointed out that a physical therapist indicated Plaintiff was functioning far below the level that should be expected and Plaintiff reported significant improvement with his anger problem in January 2010. Tr. 21.

Although the ALJ provided reasons for discrediting Rogers's statements, those statements would be undermined if the ALJ had reached a different conclusion at Steps Two and Three regarding Plaintiff's alleged impairments.


## REMAND

The Court must determine whether to remand this matter for further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate

22 - OPINION AND ORDER

award of benefits directed." *Harman*, 211 F.3d at 1178.  The
court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a
single question:  Whether the ALJ would have to award benefits if
the case were remanded for further proceedings.  *Id.* at 1178 n.2.

On this record the Court concludes further proceedings are
necessary.  It is not clear on this record whether the ALJ would
have found Plaintiff can perform her past relevant work or could
perform other work that exists in significant numbers in the
national economy if he had determined Plaintiff suffers from the
additional severe impairment of depression or chronic pain
syndrome at Step Two and included that impairment in his
evaluation of Plaintiff's RFC.  It is also not clear whether the
ALJ would have found at Step Three that Plaintiff's peripheral
arterial disease did not equal a Listing if the ALJ had obtained
the opinion of a state agency medical or psychological consultant
or an updated opinion from a medical expert.

Based on the foregoing, the Court concludes a remand for
further proceedings consistent with this Opinion and Order is
required to permit the ALJ (1) to determine whether Plaintiff has

23 - OPINION AND ORDER

the additional medically determinable impairment of chronic pain syndrome or depression, and, if so, whether those impairments would result in additional limitations in Plaintiff's RFC; (2) to obtain the opinion of a state agency medical or psychological consultant and reconsider whether Plaintiff's peripheral arterial disease equals a Listing; (3) to reconsider Plaintiff's credibility with respect to his subjective descriptions of the intensity, persistence, and limiting effects of his impairments in light of any additional severe impairment the ALJ may conclude is medically determinable; (4) reconsider the credibility of lay-witness statements with respect to the limiting effects of Plaintiff's impairments in light of any additional severe impairment the ALJ may conclude is medically determinable; and (5) to reconsider whether any new findings that the ALJ may make at Steps Two and/or Three alter the ALJ's evaluation of Plaintiff's RFC and affect the ALJ's determination as to whether Plaintiff can return to his past relevant work or is capable of performing other work that exists in significant numbers in the national economy.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of

42 U.S.C. § 405(g) for further administrative proceedings

consistent with this Opinion and Order.

    IT IS SO ORDERED.

    DATED this 12th day of September, 2013.


                            /s/ Anna J. Brown

                            _____
                            ANNA J. BROWN
                            United States District Judge